James E. PETERS, Claimant-Appellant,

v.

CHRYSLER CORPORATION, Employer-Appellee.

Supreme Court of Delaware.

July 27, 1972.

John Biggs, III, of Biggs & Battaglia, Wilmington, for claimant-appellant.

Carl Schnee, of Tybout, Redfearn & Schnee, Wilmington, for employer-appellee.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

CAREY, Justice:

In this workmen's compensation case, the claimant, James E. Peters, has appealed from an order of the Superior Court in favor of Chrysler Corporation, employer, affirming a decision of the Industrial Accident Board. The *question presented is* whether the claimant is entitled to compensation under 19 Del.C. § 2326(g), which reads as follows:

"(g) The Board shall award proper and equitable compensation for the loss of any member or part of the body or loss of use of any member or part of the body up to 300 weeks which shall be paid at the rate of 66⅔ per centum of his weekly wages, but no compensation shall be awarded when such loss was caused

by the loss of or the loss of use of a member of the body for which compensation payments are already provided by the terms of this section."

The claimant injured his back in September, 1958. § 2326(g), quoted above, became effective in May, 1959. In January, 1959, an orthopedist determined that the claimant had a partial disability of 15%. In January, 1963, his back was giving him more trouble and his partial disability increased to 30%. At that time, the orthopedist surgically attempted a fusion of the back. The operation was unsuccessful, however and a second fusion was done in October, 1964. It was successful to the extent that it reduced claimant's disability to the original 15%. Thereafter, his back gave him periodic difficulty, but in 1968, the doctors determined that further surgical intervention was not warranted.

During the course of the 1963 operation, the orthopedist. discovered a previously-undiagnosed congenital deformity in claimant's back. At the hearing, he stated that the 15% disability was the result of aggravation of the congenital deformity. He also testified that this disability was permanent, and that the permanency existed as early as January, 1959.

It is the claimant's contention that his injury was not a permanent "loss of use" within the meaning of the statute until 1968, when the doctors concluded that no further surgery should be attempted. He claims that compensation should be awarded for permanent partial disability as determined by the statute in effect on that date.

The employer contends that there was a permanent loss of use as early as January, 1959; that § 2326(g) *contains nothing to* indicate a legislative intent that it shall be retroactively applied; and that to apply it in this case would constitute a retroactive application.

In denying claimant's claim, the Industrial Accident Board specifically re-

lied upon an unreported decision of the Superior Court, as did the Superior Court in this case. That decision was based upon the theory that the compensation act forms a part of one's contract of hire, and that it is the contract of hire in existence on the date of the accidental *injury* which fixes the respective rights and obligations of the parties. Although we agree with the result, we disagree with that theory, at least with respect to a case like the present one. The compensation allowed under § 2326(g) is for a permanent disability, and there can be no award for it until such disability can be proven. The governing statute is the one in effect at the time the disability becomes permanent, and not at the time of the injury. Sherry v. Crescent Company, 101 R.I. 703, 226 A.2d 819 (1967); Allen v. Kalamazoo Paraffine Co., 312 Mich. 575, 20 N.W.2d 731 (1945).

In the usual case, the date as of which permanency becomes fixed can be proven only by expert medical testimony; that date could conceivably be the date of the injury, but usually it is sometime thereafter, and during the interval, the doctor is attempting to bring about a complete recovery; he cannot say that the condition is permanent until his efforts have failed. An example of this nature is LeBrun v. Woonsocket Spinning Co., 106 R.I. 253, 258 A.2d 562 (1969), in which the Court said:

"... [W]here, after sustaining an injury involving the loss of use, the employee submits to medical or surgical intervention in an effort to restore use to the bodily member or to ameliorate the injury, the time at which a determination of the permanence of the loss of use is to be made is when medical science has concluded that further such intervention would be of no avail ... [W]hatever the proportion of the loss of use may be, it becomes permanent in these situations when sound medical opinion takes the position that science can do no more." 258 A.2d at 564–565.

 The present case, of course, differs from *LeBrun, supra*. In that case, the employee's hand was injured; over an extended period, the physician tried to improve the condition but could not; eventually he decided that it was a permanent loss. Here the doctor did not actually ascertain existence of the permanency until the operation in 1963, at which time he was able to see the congenital deformity which had been aggravated by the accident. But having seen it, he was able to say very definitely that the permanent disability of 15% existed as early as January, 1959. The date thus fixed was prior to the statute which created the right to compensation for this type of injury. Moore v. Chrysler Corporation, Del.Supr., 233 A.2d 53 (1967). It is clear, therefore, that the Board was correct in its ultimate conclusion.

The decision below is accordingly affirmed.