**Norman E. WINDSOR, Employee Below, Appellant,**

v.

**BELL SHADES AND FLOOR COVERINGS, Employer Below, Appellee.**

Supreme Court of Delaware.

Submitted May 21, 1979.

Decided Sept. 4, 1979.

---

John J. Schmittinger and Douglas W. Lundblad of Schmittinger & Rodriguez, Dover, for employee-appellant.

Howard T. Ennis, Jr., Dover, for employer-appellee.

Before HERRMANN, C. J., and DUFFY and QUILLEN, JJ.

QUILLEN, Justice:

This is a workmen's compensation case. The Industrial Accident Board awarded total disability to the claimant, Norman E. Windsor. The employer, Bell Shades and Floor Coverings, appealed and Superior Court reversed the Industrial Accident Board. The claimant has appealed to this Court. We reverse and reinstate the award of the Industrial Accident Board.

The claimant was employed as a floor mechanic installing carpet and linoleum for over twenty-six years, from February 1949 to October 1975. As part of the job, he was required to lift, and install, with the help of other workers, heavy bolts of carpet, weighing about 300 pounds. There is no dispute about the nature of the claimant's work. It was hard and strenuous.

Claimant first injured his back in 1962 when he was carrying carpet into a job for his employer at a restaurant. This pain was diagnosed as a sciatic nerve problem. Claimant continued to experience pain in his back from 1962. He obtained some relief from treatments by a chiropractor. But, in 1974, the pain became much more severe. The claimant then sought treatment from his family doctor, who, after taking x-rays, referred him to a neurosurgeon, Dr. Henry K. Shoemaker, who is the key witness in the case.

Dr. Shoemaker conducted a physical examination and had a myelogram performed which indicated that the claimant had a lumbar root compression due to a disc protrusion or extrusion. The claimant had two disc problems, one of which was chronic and old and the other was of relatively recent origin. Dr. Shoemaker recommended surgery in 1974. The claimant at first declined, but he submitted to surgery a year later, in November, 1975, when the pain became unbearable. Except for a one half day attempt to work following the operation, he last worked on October 30, 1975.

The findings of the status of claimant's back injury were set out in the Superior Court Opinion as follows:

"Both Dr. Shoemaker and Dr. Theodore Strange, an orthopedic surgeon, testified that the claimant's difficulties with his back were the result of the stress and severity of his job. They also testified that the claimant's 'disc disease' was slow and progressive from the 10 or 15 years since the time of the initial injury. There was no subsequent injury or accident which triggered the claimant's increased pain or necessitated the corrective surgery.

"Dr. Strange testified that the removal of the two discs resulted in a 12 to 15 percent impairment for the claimant. However, he also testified that due to the strenuous nature of the claimant's work, the claimant was 100 percent disabled from this employment. Claimant testified that he attempted to return to work but that he was unable to perform his former duties. The employer, having no lighter duties for the claimant to perform, has declined to rehire him."

Before the Industrial Accident Board, claimant's attorney stressed that the claimant was disabled due to degenerative disc disease brought about by the excessive wear and tear of his employment. He did not rely on an accident. The Board rejected the occupational disease theory and in-

stead found that the claimant had suffered an industrial accident. The Board relied on the fourth concept set out in *Chicago Bridge & Iron Co. v. Walker,* Del.Supr., 372 A.2d 185, 187 (1977) which stated that a claimant was entitled to an award when:

"(4) He proves that his work has had a cumulative detrimental effect on his physical condition, *General Motors Corporation v. McNemar,* Del.Supr., [7 Storey 511] 202 A.2d 803, 806 (1964)." [1]

The Board specifically found that the claimant met the two part test set out in *McNemar, supra,* and explained in *Chicago Bridge.* In particular, the Board found:

"1. the claimants usual duties and work habits contributed to his condition;

"2. such contributing factors were present on the day his right to compensation commenced (October 30, 1975)."

The Superior Court found the conclusion that the claimant met the first part of the test "inescapable". Indeed, in this case there is no question that the claimant's work caused his injury. There is simply no other possible cause indicated in the record. However, the Superior Court found the Board in error in finding that the claimant met the second part of the test.

■■■ The Court found that the injury must be traceable to a "sudden cause" or a "sudden result" and that the injury must be traceable to a definite occasion during the claimant's work. As part of its review, the Superior Court properly defined its role on an appeal from a decision of the Industrial Accident Board as follows:

"The sole function of this Court is to determine whether or not there is substantial competent evidence to support the findings of the Board. *Hensley v. Artic Roofing, Inc.,* Del.Supr., 369 A.2d 678 (1976); *Johnson v. Chrysler Corp.,* Del.Supr., [9 Storey 48] 213 A.2d 64 (1965). If the evidence is substantial and there are no errors of law, then this Court must affirm the findings of the Board. *M. A. Hartnett, Inc. v. Coleman,* Del.Supr., 226 A.2d 910 (1967); *General Motors Corporation v. Morgan,* Del.Super., 286 A.2d 759 (1971)."

The Superior Court did not disagree with any of the factual findings of the Board, but instead found that the Board had made an error of law in its application of the *Chicago Bridge* case. In essence, the Superior Court found that the record fails to disclose the necessary requirement of an accident.[2] The statute only provides "compensation for personal injury . . . by accident arising out of and in the course of employment". 19 *Del.C.* § 2304.

Our view of the record differs from that of the Superior Court. This is not a case of some vague, undetermined injury. Dr. Shoemaker's testimony is quite specific. The claimant was referred to Dr. Shoemaker "because of increased pain and recurrence of distress in June [of 1974]." The pain had become "acute". The claimant was analyzed for "a protruding or obtruding disc." A myelogram reinforced x-ray

---

1. The other three concepts were:

"(1) He proves that 'the injury happened at a fixed time and place and was attributable to a clearly traceable incident of . . . [his] employment', *Gray's Hatchery & Poultry Farms v. Stevens,* Del.Super., 7 Terry 191, 81 A.2d 322, 324 (1950); *Faline v. Guido and Francis DeAscanis & Sons,* Del.Supr., [6 Storey 202] 192 A.2d 921, 924 (1963);

"(2) He proves that 'unusual exertion' in the course of his employment aggravated a pre-existing physical weakness, *Milowicki v. Post and Paddock, Inc.,* Del.Supr., 260 A.2d 430, 432 (1969); *Faline v. Guido and Francis DeAscanis & Sons, supra* [192 A.2d] at 924;

"(3) He proves that he sustained a 'compensable occupational disease' as defined in

§ 2301(4), cf. *Air Mod Corporation v. Newton,* Del.Supr., [9 Storey 148] 215 A.2d 434, 441 (1965);"

2. The Superior Court said:

"Although the Board found that the contributing factors were present on the day that the right to compensation commenced, i. e. October 30, 1975, it is apparent that this finding was merely tantamount to a conclusion that the claimant was employed in his usual duties on his last day of work. In order for this requirement to have any meaning, it must be shown that the contributing factors were present on the day of disability to cause the disability."

diagnosis to suggest "a large L4 disc protrusion and possibly a L5 disc protrusion." It is clear from the doctor's testimony in light of the subsequent 1975 operation that Mr. Windsor "had two problems", one "chronic and old", the other "relatively recent". Significantly, the doctor had the following exchange with counsel for the employer:

"Q Can an extruded disc, Doctor, result from a degenerative change from a period of time or does it almost coincide from an injury?

"A There has to be some kind of a mechanical distress to force that piece of disc out."

The doctor specifically placed the new injury as occurring "in or about June of '74." The old injury, he further testified, could have occurred as long ago as 1962. Both conditions "are the result of an injury to a lumber spine at some point in time."

We think the testimony clearly shows that the dual injury which resulted in disability in October 1975 was the result of two identifiable accidents at work specifically caused by the claimant's usual duties and work habits. Such duties and habits continued to aggravate his injuries until the day he ceased his employment due to disability. Under such circumstances, the Superior Court erred in determining the requisite accident requirement was not satisfied and the Industrial Accident Board correctly relied on the *Chicago Bridge* case.

The judgment of the Superior Court is reversed and the case is remanded with instructions to reinstate the award of the Industrial Accident Board.