**Walker COOPER, Claimant, Appellant,**

v.

**CHRYSLER CORPORATION, Employer, Appellee.**

Supreme Court of Delaware.

Submitted Oct. 20, 1980.

Decided Feb. 9, 1981.

Julian D. Winslow (argued), Wilmington, for claimant, appellant.

Susan C. Del Pesco (argued) and Carl Schnee of Schnee & Castle, P. A., Wilmington, for employer, appellee.

Before HERRMANN, C. J., McNEILLY and HORSEY, JJ.

PER CURIAM:

This appeal concerns a workmen's compensation claim for permanent partial disability benefits where disability is conceded but time of onset of permanency is disputed. The dispute relates of the proper computation of a permanent partial disability award and arises because the statutory benefits were increased after filing of petition, but before hearing, and several years after claimant's industrial accident and award to temporary total disability benefits.

Claimant, Walker Cooper, appeals Superior Court's reversal of the Industrial Accident Board's decision that Cooper's entire permanent partial disability award under 19 *Del.C.* § 2326(h), arising out of a 1973 industrial accident, should be computed at the statute's increased benefit levels enacted effective July 12, 1978.[1]

Reversal was based on three factors: (1) the Court's understanding that the parties conceded that under *Peters v. Chrysler Corporation*, Del.Supr., 295 A.2d 702 (1972), a claim for permanent injury under § 2326 is governed by the statute in effect at the time disability becomes permanent; (2) the Board's failure to make any finding, explicit or implicit, as to when claimant's disability became permanent; and (3) the lack of any substantial evidence in the record to support a determination (if one had been made) that claimant's entire disability "arose and became fixed" after July 12, 1978.

---

1. By 61 *Del.Laws*, c. 515, § 2, the maximum weekly rate of compensation for permanent partial disability as set forth under 19 *Del.C.* § 2326(h) was increased from $75 to ⅔ of the claimant's average weekly wages as determined by the Secretary of Labor.

The Court ruled that the evidence compelled a finding that claimant's disability became permanent well prior to the 1978 amendment of § 2326(h) and while there was evidence claimant's permanent disability had thereafter increased, the record was inadequate to determine the extent of any increase in disability after July 12, 1978. The Court also concluded that to the extent of any increase in claimant's disability after July 12, 1978 claimant was, under *Asplundh Tree Expert Co. v. Clark*, Del.Super., 369 A.2d 1084 (1975), *aff'd*, Del.Supr., 372 A.2d 537 (1977), entitled to compensation at the post-amendment rate. Therefore, the Court remanded the case to the Board for a further evidentiary hearing and findings as to the following questions.

1. When did Claimant initially become permanently disabled?
2. What was the extent of Claimant's initial permanent disability?
3. Did Claimant's permanent disability subsequently increase and, if so, when and to what extent?
4. To what extent, if any, did Claimant's disability become permanent after July 12, 1978?

Claimant makes two contentions for reversal: (1) that the Court misconstrued *Peters*, contending it should be read as holding that permanency *cannot* attach or be fixed in a case of ongoing medical treatment until "sound medical opinion takes the position that science can do no more"; [2] and (2) since claimant was still undergoing medical treatment (conceded to be related to his 1973 industrial accident) after July 12, 1978, there was substantial evidence of record that his degree of permanency was not fixed until a date subsequent to July 12, 1978.

Appellee, Chrysler, while urging affirmance as to claimant's appeal, argues for reversal insofar as the Court below ruled that any increase in claimant's permanent disability found to have occurred after July 12, 1978 should be paid at the post-amendment rate. Chrysler contends that under *E. I. duPont de Nemours & Co. v. Green*, Del. Supr., 411 A.2d 953 (1980), absent any evidence that claimant sustained a new injury after July 12, 1978, the Court's reliance upon *Asplundh* is misplaced; and the applicable rate of compensation for any later increase in disability is the rate in effect when disability was first fixed.

We decline to pass upon appellee's contention because it was not raised by cross-appeal and fully briefed; and as to the appeal, we affirm both on the law and the evidence.

Claimant misreads our holding in *Peters v. Chrysler, supra,* the facts of which are analogous to this case. In *Peters* we rejected a contention that an injury in 1958 did not become permanent until 1968 (when legislation was first enacted permitting recovery for such loss) merely because doctors did not conclude until 1968 that no further surgery should be attempted. We held that permanency attached in 1959 because the evidence established that as a result of a surgical operation in 1963 medical science

---

2. The quotation is from *LeBrun v. Woonsocket Spinning Co.*, 106 R.I. 253, 258 A.2d 562 (1969) and quoted in *Peters v. Chrysler Corporation, supra.* The quoted statement, in context, appears as follows in *Peters*:

"In the usual case, the date as of which permanency becomes fixed can be proven only by expert medical testimony; that date could <u>conceivably</u> be the date of the injury, but <u>usually</u> it is sometime thereafter, and during the interval, the doctor is attempting to bring about a <u>complete</u> recovery; he cannot say that the condition is permanent until his efforts have failed. An example of this nature is *LeBrun v. Woonsocket Spinning Co.*, 106 R.I. 253, 258 A.2d 562 (1969), in which the Court said:

'... [W]here, after sustaining an injury involving the loss of use, the employee submits to medical or surgical intervention in an effort to restore use to the bodily member or to ameliorate the injury, the time at which a determination of the permanence of the loss of use is to be made is when medical science has concluded that further such intervention would be of no avail ... [W]hatever the proportion of the loss of use may be, it becomes permanent in these situations when sound medical opinion takes the position that science can do no more.' 106 R.I. 253, 258 A.2d at 564–565." (underlining added for emphasis) 295 A.2d at 704.

was able to say that permanent disability had occurred as early as 1959.

Similarly here, medical testimony was unanimous that claimant had sustained a permanent disability from his 1973 injury no later than December 1977. While as early as January 1977 claimant's physician had reported claimant to have a permanent disability as to his back and both legs, not until surgery in December 1977 did claimant's physician find permanency to be an established fact. And employer's physician likewise found claimant in mid-1977 to have a permanent partial disability of the back.

Since claimant's contention as to the law fails, his argument as to the sufficiency of the evidence must also. Stated another way, claimant's evidence that he was still undergoing treatment after July 12, 1978 for his 1973 injury is insufficient, as a matter of law, to support the Board's finding that claimant's entire permanent disability was compensable at the post-July 12, 1978 rate.

AFFIRMED.