Melvin PUSEY, Claimant, Appellant,

v.

NATKIN & COMPANY, Employer, Appellee.

Supreme Court of Delaware.

Submitted March 9, 1981.

Decided April 7, 1981.

John J. Schmittinger (argued) and Douglas W. Lundblad, of Schmittinger & Rodriguez, P. A., Dover, for claimant, appellant.

Robert W. Ralston (argued), of Prickett, Jones, Elliott & Kristol, Wilmington, for employer, appellee.

Before HERRMANN, C. J., DUFFY and QUILLEN, JJ.

DUFFY, Justice:

Melvin Pusey (claimant) appeals from a Superior Court order which reversed in part a decision of the Industrial Accident Board (Board) awarding permanent partial disability benefits. We affirm the judgment of the Superior Court.

**I**

On March 24, 1976, while employed as a millwright by Natkin & Company (employer), Pusey sustained an on-the-job injury to his back. After a myelogram had indicated herniation of a spinal disc, Pusey underwent surgery in May 1976 for removal of the damaged disc and for a spinal fusion of three other vertebrae. He continued to suffer pain and, consequently, a second myelogram was performed in the fall of 1977. Exploratory surgery followed in December 1977, but pseudoarthrosis [1] was not discov-

ered in the area of the spinal fusion. Pusey's pain persisted and so he sought a second opinion from Dr. John T. Hogan, who is an orthopedic surgeon. Dr. Hogan examined Pusey on August 21, 1978 and found a degree of permanent disability to the back. In December 1978, Pusey filed a petition with the Board for permanent disability benefits under 19 *Del.C.* § 2326(h).

Dr. Hogan was the only witness at the Board hearing, which was held on May 17, 1979. Based on medical reports, he testified to the above facts about Pusey's medical history. Dr. Hogan also testified that his examination in August 1978 established a fifty percent permanent partial disability but that, in his opinion, the permanency of Pusey's injury predated the second surgery which was performed in December 1977.

The Board found that Pusey's injury did not become permanent until August 1978 and, accordingly, awarded him compensation at the rate of two-thirds of his weekly wage, that is, at the rate provided by an amended version of § 2326(h) which became effective July 12, 1978. The Superior Court reversed, holding that, in light of Dr. Hogan's testimony, the Board's finding of permanency after and not before July 12, 1978 was unsupported by substantial evidence. The Court thus sustained Pusey's right to compensation but at a lower rate, that is, at the rate fixed by the pre-amendment version of § 2326(h). Pusey then docketed this appeal.

**II**

Before July 12, 1978, 19 *Del.C.* § 2326(h) provided for a maximum payment of $75. per week for permanent partial injuries to the back. The General Assembly amended that provision, effective July 12, 1978, to permit a higher rate of compensation for a claimant suffering permanent injuries after that date; specifically, up to "66⅔% of the average weekly wage per week as announced by the Secretary of Labor for the

---

[1]. Pseudoarthrosis is the medical term for false motion or false joint which may result from an unsuccessful spinal fusion.

last calendar year for which a determination of the average weekly wage has been made .... " 61 *Del.Laws* c. 515, § 2.

Both parties agree that the Statute in effect at the time an injury becomes permanent governs the respective rights and obligations of an employer and employee. *Peters v. Chrysler Corp.*, Del.Supr., 295 A.2d 702 (1972). Hence, in order to determine whether the original or the amended version of § 2326(h) applies to this case (and, thus, fixes the rate of compensation), we must determine from the record at what point in time Pusey's injury became permanent.

### A.

Pusey urges this Court to follow the rationale adopted in a Rhode Island case in determining the time of permanency, *LeBrun v. Woonsocket Spinning Co., Inc.*, 106 R.I. 253, 258 A.2d 562 (1969), a rationale which he says we approved in *Peters*. The *LeBrun* Court held that permanency is established "when sound medical opinion takes the position that science can do no more." *Id.* at 564–65. In the instant case, since medical treatment (and hope for recovery) was not finally concluded until the August 1978 examination by Dr. Hogan, Pusey says his injury was not permanent until after the July 12, 1978 amendment to § 2326(h).

■ We recently rejected a similar contention in *Cooper v. Chrysler Corp.*, Del. Supr., 426 A.2d 322 (1981), and we briefly reiterate that position here. In our view, Pusey misreads the *Peters* decision. If it is not clear there, we hope to make clear here that determination of the date on which permanency first becomes fixed is a medical question to be decided on the basis of expert medical testimony. Dr. Hogan's unrebutted testimony that the injury was permanent prior to July 1978 meets that standard and, thus, the date on which Pusey last received medical treatment is not controlling evidence in this case.

Claimant next contends that the Board, as trier of fact, is free to decide which medical evidence to accept and which to reject. *Sears, Roebuck and Co. v. Farley*, Del.Supr., 290 A.2d 639 (1972). Characterizing Dr. Hogan's testimony regarding the permanency of the injury prior to July 12, 1978 as speculative and without the necessary reasonable medical certainty, *General Motors Corp. v. Freeman*, Del.Supr., 3 Storey 74, 164 A.2d 686 (1960), Pusey says the Board was free to reject that opinion and accept, instead, the date permanency was established by the post-amendment examination.

Our review of the record indicates the contrary: Dr. Hogan's testimony was based on his experience, his examination of Pusey and his review of the medical reports; and when questioned by claimant's counsel, he gave his opinion on the basis of reasonable medical certainty. In our view, then, Dr. Hogan's opinion that claimant's injury was permanent prior to the second surgery constituted competent, unrebutted medical evidence which the Board could not ignore. It follows that the Superior Court was correct in concluding that there was not substantial evidence to support the Board's ruling that the injury first became permanent after July 12, 1978 and not before. *Windsor v. Bell Shades and Floor Coverings*, Del.Supr., 403 A.2d 1127 (1979); *Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64 (1965). Accordingly, we hold that Pusey is entitled to compensation but at the rate provided by § 2326(h) before the July 12, 1978 amendment.

### B.

Lastly, in support of reversal, Pusey points to a Board guideline, promulgated on August 24, 1978, which constitutes its interpretation of § 2326(h), as amended:

> "The Board will use the earliest date a competent examining or treating physician determines a percentage of permanency to the injured portion(s) of the claimant's body."

Claimant says that this guideline is a rule of procedure under which the Board will not find credible a physician's testimony concerning a claimant's condition before the

physician has examined or treated the claimant (i. e., Dr. Hogan's opinion that claimant's injury was permanent long before the August 1978 examination).[2] And, since the Board has the power, under 19 *Del.C.* § 2121(a), to promulgate such a rule of procedure, the argument goes, its application to the facts of this case produced an evidentiary basis to support its finding that claimant's injury was permanent after and not before the July 12, 1978 amendment to § 2326(h).

We do not express a view on the accuracy of claimant's construction of the Board's somewhat ambiguous guideline because we disapprove of the guideline itself. In our opinion, it is arbitrary and would exclude any consideration of otherwise competent expert testimony (such as Dr. Hogan's). Cf. *Carroll v. Tarburton*, Del.Super., 209 A.2d 86, 88–89 (1965); *National Vulcanized Fibre Co. v. Unemployment Comp. Comm'n.*, Del.Super., 7 Terry 229, 82 A.2d 725, 729 (1951).

In sum, we decline to give effect to the Board's guideline and we agree with the Superior Court's judgment that the Board's finding of permanency after and not before the effective date of the § 2326(h) amendment is unsupported by substantial evidence in the record.

\*   \*   \*   \*   \*   \*

Affirmed.

---

**2.** The Board followed its announced guideline in this case, saying:

"Dr. Hogan first saw the claimant August 1, 1978. The Board thus found the permanency rating became fixed on that date."