STATE INDUSTRIAL INSURANCE SYSTEM, an Agency of the State of Nevada, Appellant, *v.* RONALD A. HARRISON, Respondent.

No. 17724

STATE INDUSTRIAL INSURANCE SYSTEM, an Agency of the State of Nevada, Appellant, *v.* RONALD A. HARRISON, Respondent.

No. 17931

December 10, 1987                                746 P.2d 1095

---

[Rehearing denied April 28, 1988]

*Pamela Bugge,* Carson City, and *Virginia Hunt,* Las Vegas, for Appellant.

*Johns & Johns,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

In these consolidated appeals the State Industrial Insurance System (SIIS) challenges a district court judgment establishing a 1983 permanent total disability rate for calculating respondent Ronald A. Harrison's benefits. SIIS also contends that the district court erred in granting mandamus to compel the agency to use a maximum 1983 wage base in calculating Harrison's benefits. Our review of the record and the law reveals no basis for reversal.

On January 10, 1975, Harrison sustained a compensable industrial injury when he fell from a ladder and fractured his left tibia and fibula. After operations and treatment, SIIS rated Harrison as having a 34 percent permanent partial disability. Because of the severity of his injury, Harrison was unable to work for a long period after his accident.

In 1983, Harrison underwent emergency surgery consisting of an above-the-knee amputation of his left leg. The amputation was

necessary because of a serious infection which had developed at the site of the 1975 leg injury. SIIS re-opened the case and re-rated Harrison as having a permanent total disability.

SIIS informed Harrison that he would thereafter be provided with permanent total disability benefits based on (1) his 1975 average monthly wage ("wage base"), and (2) the 1975 perma-nent total disability rate. The latter rate, in effect, was lower than the 1983 rate, which, under NRS 616.580, was 66.67 percent. Harrison's 1975 wage base was $1,080, which, at that time, exceeded by $352.52 the maximum wage base upon which bene-fits could be calculated. Under NRS 616.580, the monthly benefit payment for permanent total disability is calculated by multiply-ing the wage base by the disability rate.

Harrison appealed SIIS's determination to use 1975 figures, claiming that his benefits should be based on 1983 figures. The appeals officer upheld the SIIS determination, reasoning that because the amputation was a "continuation" of the 1975 injury, the 1975 wage base and disability rates should be used in calcu-lating Harrison's benefits. Thereafter, Harrison successfully peti-tioned the district court for judicial review. The district court reversed the appeals officer's decision and held that Harrison's 1983 infection and amputation was an injury distinct from his earlier broken leg. The court ordered SIIS to pay benefits based upon the date of the amputation.

SIIS then implemented the district court order by applying the 1983 permanent total disability rate, 66.67 percent, to a 1983 average wage base of $500. SIIS used a $500 wage base because Harrison allegedly earned $500 one month before the amputa-tion.

Harrison filed a petition for writ of mandamus to compel SIIS to apply the 1983 disability rate to the 1983 maximum wage base of $1,930.38. The district court granted the writ on the basis that Harrison would have been earning in excess of the 1983 maxi-mum wage base had it not been for the 1975 industrial accident. The court noted that Harrison's earnings exceeded the maximum wage base during the year of his accident and concluded there was no reason to believe that his 1983 earnings would have been less than the maximum if his capacity to work had not been destroyed by the 1975 injury. We agree.

## Discussion

NRS 616.625 provides "Except as otherwise provided by specific statute, the amount of compensation and benefits and the person or persons entitled thereto must be determined as of the

date of the accident or injury to the employee, and their rights thereto become fixed as of that date." On appeal, SIIS argues that the amputation resulted from the 1975 accident, and, under NRS 616.625, a 1975 permanent total disability rate should have been used.

The lower court disagreed, determining that, under the statute, Harrison's infection and amputation constituted a 1983 injury to be compensated according to the 1983 permanent disability rate of 66.67 percent. We cannot say that this determination was erroneous.[1] Harrison's 1975 injury involved fractures that left his leg intact. The fractures, of course, were disabling and an undoubted source of frustration for the injured workman. However, the 1983 infection with resulting amputation constituted an injury of an entirely new nature and dimension. While the etiology of the infection may implicate the 1975 fractures, the nexus between the fractures and an amputation occurring eight years later is of insufficient magnitude and linkage to deprive Harrison of the benefits applicable to him as of the date of the loss of his leg. Moreover, the court could have reasoned that two injuries resulted from Harrison's 1975 industrial accident. The first injury was the broken leg. The second discrete injury was the leg infection that was diagnosed and treated by amputation in 1983. Because the second injury did not result until 1983, the right to claim permanent total disability did not vest until 1983. Applying this reasoning under NRS 616.625, the statutory "date of the . . . injury to the employee" was 1983 and Harrison's "rights thereto [became] fixed as of that date."

The lower court's decision also is compatible with this court's policy of construing the workmen's compensation laws liberally in favor of worker protection. SIIS v. Weaver, 103 Nev. 196, 734 P.2d 740, (1987). Several other courts have ruled that when an industrial accident and disability do not occur simultaneously, the rate in effect at the time the disability arises, rather than at the time of accident, governs.[2]

---

[1]As we noted in SIIS v. Swinney, 103 Nev. 17, 731 P.2d 359, 361 (1987), "successive accidental injuries may be divided into three types—new injuries, aggravations of a prior injury, and recurrences." We also noted that "how a subsequent injury is characterized depends on the facts, medical evidence and circumstances. An appeals officer's determination [that an injury is a new injury, an aggravation, or a recurrence] may not be set aside unless it is against the manifest weight of the evidence." After review of the record, we are convinced that the appeals officer's determination that Harrison's infection and amputation was a recurrence, rather than a new injury, was against the manifest weight of the evidence.

[2]See Prescott v. United States, 523 F.Supp. 918, 926 (D.Nev. 1981) (when "actual disability occurs after the date of the accident . . . the law in effect at the date of the occurrence of the disability governs, and not the law at the

Therefore, the district court did not err by holding that the 1983 rate of 66.67 percent should be used in calculating Harrison's permanent total disability benefits.

SIIS suggests that affirmance of the 1983 permanent total disability rate requires application of the $500 wage base Harrison was allegedly earning in 1983. Although the principle it asserts is correct,[3] the figure it uses is not. Even assuming that Harrison was making $500 per month at the time of his amputation, his benefits should not be based on that amount. Use of this wage base would penalize Harrison for obtaining employment with a lower salary than he had when his disabling accident occurred.

Before his accident, Harrison was earning well in excess of the maximum wage base. After examination of the record on appeal, we are in agreement with the trial court that but for Harrison's industrial accident, he would have been earning in excess of the 1983 maximum wage base. Therefore, the lower court's decision that benefits must be based on earnings equal to the hypothetical 1983 maximum wage base of $1,930.38 was not error.

For the reasons expressed above, the decisions of the district court in both of the consolidated cases are affirmed.[4]

---

date of the accident''); Dickow v. Workmen's Compensation Appeals Bd., 109 Cal.Rptr. 317, 318 (Ct.App. 1973) (''When [a] right comes into existence certain rates are applicable. It would seem that these are the rates by which compensation should be payable.''); Peters v. Chrysler Corp., 295 A.2d 702, 704 (Del. 1972) (''The governing statute is the one in effect at the time the disability becomes permanent, and not at the time of the injury.''); Allen v. Kalamazoo Paraffin Co., 20 N.W.2d 731, 732 (Mich. 1945) (rate at time of disability, not accident, governs); Sherry v. Crescent Co., 226 A.2d 819 (R.I. 1967); cf. Wood v. J. P. Stevens & Co., 256 S.E.2d 692, 698 (N.C. 1979) (for occupational diseases, date of disablement determines which law applies); Wyoming State Treasurer v. Barnes (In re Barnes), 587 P.2d 214, 219 (Wyo. 1978) (cause of action arises when employee operated on, and not when accident occurred).

[3]See Ranger v. New Hampshire Youth Dev. Center, 377 A.2d 132, 134 (N.H. 1977) (when accident and disability do not occur simultaneously, wage base at time of disability, not accident, should be used).

[4]SIIS argues that if every time a claim is reopened, SIIS must recalculate benefits based on rates in effect on the date the claim is reopened, the system will be financially strained. However, our holding in this case only governs those rare situations where a single industrial accident causes two distinct injuries, one of which arises some time after the accident.