Eugene WATSON, Claimant Below, Appellant,

v.

WAL–MART ASSOCIATES, a Delaware Corporation, Employer Below, Appellee.

No. 442, 2010.

Supreme Court of Delaware.

Submitted: July 27, 2011.
Decided: Oct. 21, 2011.
Reargument Denied Nov. 4, 2011.

---

Bayard J. Snyder, Esquire, Snyder & Associates, P.A., Wilmington, Delaware, for Appellant.

Christine P. O'Connor, Esquire, Tybout, Redfearn & Pell, Wilmington, Delaware for Appellee.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices, and PARSONS, Vice Chancellor,* constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider the evidence required to prove and disprove that a claimant is a "displaced" worker under the workers' compensation law. A displaced worker is a partially disabled claimant who is deemed to be totally disabled because he is unable to work in the competitive labor market as a result of a work-related injury. A claimant who is not *prima facie*

---

* Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4(a) to fill up the quorum as required.

displaced, has the burden to prove that he made a reasonable job search, but was unable to obtain employment because of his disability. If a claimant satisfies that burden, the employer may rebut that evidence by showing that there are jobs available within the claimant's capabilities.

The Industrial Accident Board must use objective standards in deciding both of these issues. Where, as here, the claimant applied to at least a dozen jobs that were within his physical restrictions and were actually available, there was no basis to find that the search was unreasonable. Similarly, if the burden shifts to the employer to establish that there are jobs available within the claimant's limitations, a job survey will not automatically satisfy that burden. The employer must establish that the listed jobs actually are "available." If the claimant applied for most of the same jobs listed in the employer's survey without success, then the survey alone is insufficient evidence to satisfy the employer's burden. The Board found otherwise. Accordingly, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Eugene Watson suffered a back injury in May 2007, while working at Wal–Mart Associates as a laborer. In August 2008, Watson underwent disc replacement surgery, which did not relieve his pain. After physical therapy, Watson's doctor limited him to sedentary or light work with a 20 pound lifting restriction. In December 2008, Wal–Mart filed a petition to terminate Watson's total disability benefits. In October 2009, the Board issued its decision terminating Watson's total disability benefits. In June 2010, the Superior Court affirmed. This appeal followed.

The doctors all agreed that Watson suffered a permanent partial disability as a result of the 2007 accident. They also agreed that Watson's partial disability limits him to sedentary or light duty work, with no heavy lifting. The only issue before the Board was whether Watson is a displaced worker. Jessica Reno, a vocational case manager, testified that Watson has transferable skills and that there were 9 jobs available within his physical limitations, such as cashier, customer service representative, and debt collector. Reno spoke with the prospective employers and determined that each one would consider hiring someone with Watson's disabilities. Reno did not contact Wal–Mart because she did not see any ads for openings at any of the many Wal–Mart stores near Dover, Delaware.

Watson is a 56 year-old high school graduate who has no job skills other than his ability to follow instructions and to hold down a job. He worked as a janitor and an automobile assembly line worker, among other jobs, before working for Wal–Mart as a freight loader. After Wal–Mart filed its petition to terminate Watson's total disability benefits, he started a job search. Watson applied for 28 jobs without success. He applied online and in person, and always disclosed his disability on the applications. Watson received no response from the online applications. Two businesses that Watson applied to in person sent him letters saying that they could not hire him because of his disability. No other employer responded.

Watson acknowledged that some of the jobs he applied for were beyond his 20 pound lifting restriction. Watson also acknowledged that he did not ask any of the prospective employers whether any training would be required and he never asked what he would be paid. According to Reno, 12 of the 28 jobs required work outside Watson's restrictions, and that at least three of the remaining 16 jobs (all of which were listed on her labor market survey) had been filled by the time he applied for them.

The Board found that Watson's job search was not adequate and that he failed to prove that he was denied employment because of his disability. Accordingly, the Board granted Wal–Mart's petition to terminate Watson's total disability benefits. Based on Reno's testimony as to the average wages paid for the jobs listed in her labor market survey, the Board awarded Watson partial disability benefits. The Superior Court affirmed.

## DISCUSSION

The displaced worker doctrine recognizes that a worker who is not totally disabled nonetheless may be entitled to total disability benefits under Delaware's Workers' Compensation Law:

> [T]he determination of total disability requires consideration and weighing of not only the medical and physical facts but also such factors as the employee's age, education, general background, occupational and general experience, emotional stability, the nature of the work performable under the physical impairment, and the availability of such work. The proper balancing of the medical and wage-loss factors is the essence of the problem.... A workman may be totally disabled economically, and within the meaning of the Workmen's Compensation Law, although only partially disabled physically. In this connection, inability to secure work, if causally connected to the injury, is as important a factor as the inability to work.[1]

The claimant must demonstrate that he is a displaced worker, either by showing that he is a *prima facie* displaced worker, or that he "made reasonable efforts to secure suitable employment which have been unsuccessful because of the injury."[2] To rebut such a showing, the employer must establish "the availability of regular employment within the [claimant's] capabilities."[3]

Claimants generally establish the reasonableness of their job searches through their own testimony, notes they kept during the job search, and any correspondence from prospective employers. Although the Board is the fact-finder, it is not free to ignore this evidence if it is undisputed. The Board cannot find against the claimant simply because the claimant did not do everything he could have done. Its task is to determine whether the claimant's efforts were reasonable, not whether they were perfect. So, for example, if a claimant applied for a reasonable number of jobs that were available and within his physical limitations, it should not count against him if he also applied for jobs that were beyond his physical restrictions. Similarly, if a claimant applied for jobs listed on the employer's labor market survey, it should not count against him if one or more of those jobs were not available at the time of his application.

If the claimant shows that he conducted a reasonable job search and has been unsuccessful because of his work-related injury,[4] the burden shifts to the employer to rebut the claimant's showing. Typically, the employer relies on a vocational specialist who has prepared a labor

---

1. *Ham v. Chrysler Corporation,* 231 A.2d 258, 261 (Del.1967).

2. *Franklin Fabricators v. Irwin,* 306 A.2d 734, 737 (Del.1973).

3. *Ham v. Chrysler Corporation,* 231 A.2d at 262.

4. If the claimant advises prospective employers that he has a physical limitation, and he does not get the job, there is an inference that employer turned the claimant down because of the partial disability. *Keeler v. Metal Masters Foodservice Equipment Co.,* 712 A.2d 1004, 1005 (Del.1998).

market survey identifying jobs that the claimant is qualified to perform. But those surveys do not purport to establish that such jobs are available, only that they exist and were available at some point. "A proper application of the displaced worker doctrine can only be made by considering the contemporaneous availability of employment."[5] If the claimant has applied for most of the jobs on the survey, without success, the labor market survey's evidentiary value is significantly diminished. Without more, such a survey establishes only that the claimant might be able to find work, not that appropriate jobs are actually available. Under those circumstances, the labor market survey is insufficient to overcome the claimant's showing that he was unable to find work and, therefore, is a displaced worker.

Applying these principles to the facts of this case, the only conclusion that is supported by substantial evidence is that Watson is a displaced worker. He applied for 28 jobs, online and in person, including 6 of the 9 jobs identified in Reno's labor market survey. Watson had worked as a custodian for many years, and he applied for positions such as housekeeping, floor maintenance, and custodian, among others. Watson acknowledged that those were medium duty, not light duty, jobs and therefore, were beyond his restriction on lifting more than 20 pounds. But it was not unreasonable for him to think that an employer might want to hire him and modify his workload so as to conform to the weight lifting limitation. Moreover, Reno agreed that 16 of the 28 jobs Watson applied for were within his restrictions. Watson received only two responses to his applications. Both responding employers said that they could not hire him because of his partial disability.

From this evidence, the Board concluded that Watson did not conduct an adequate job search. It based that conclusion on the fact that Watson, "has not heard back from most of the jobs on his log, some jobs were not hiring, and other jobs were beyond his restrictions." But there is no evidence that employers contact prospective employees that they are not interested in hiring or that, in these circumstances, Watson should have contacted any employer again. Thus, the fact that Watson did not hear from most of the prospective employers has no probative value. As for Watson's 16 "appropriate" job applications, the Board made no finding that they were somehow inadequate, and nothing in the record would support such a finding. Accordingly, the Board's conclusion that Watson's job search was not reasonable must be reversed.

The Board also decided that Reno's survey and her testimony proved that Watson was not a displaced worker because the survey identified jobs that were within Watson's restrictions and "available in the open market." The Board was required to accept Watson's undisputed testimony that he applied for 28 jobs, including 6 of the jobs in Reno's survey, without success. Reno herself testified that 3 of her 9 jobs were *not* available when Watson applied for them. There was no evidence about the availability of the remaining 6 jobs. Wal–Mart did not find any job within its many, large retail stores that Watson could perform, and it apparently did nothing to assist Watson in finding a job elsewhere.

Wal–Mart's failure to rehire Watson is strong evidence that Watson is a displaced worker.[6] A small labor market survey indicating the *possible* availability of 6 jobs

5. *Adams v. Shore Disposal, Inc.*, 720 A.2d 272, 273 (Del.1998).

6. *Chrysler Corporation v. Duff*, 314 A.2d 915, 918 (Del.1973) (citing Larson's Workmens' Compensation Law, § 57.62).

is not enough to overcome Wal–Mart's failure to rehire Watson, let alone Watson's unsuccessful job search. Wal–Mart had to demonstrate that appropriate jobs actually were available [7], and that the prospective employers would hire—not merely consider hiring—a person in Watson's position. Wal–Mart's evidence did not meet this standard.

 The purpose of the displaced worker doctrine is to provide full workers' compensation benefits for those who are partially disabled but unable to find work because of the disability. Unskilled laborers, like Watson, are the people most likely to fall into this category.[8] They do not have resumes or well developed interviewing skills. Their attorneys tell them that they must conscientiously look for work, and that they should keep a log of their efforts. When they follow those instructions, and do not find work, they should not be denied full benefits unless it is clear that appropriate jobs are truly available.

## CONCLUSION

Based on the foregoing, the decision of the Superior Court is reversed, and the decision of the Industrial Accident Board is reversed. This matter is remanded to the Superior Court for further action in accordance with this opinion.

---

**7.** A job opening that generates a long line of applicants the day that it is posted cannot reasonably be considered an available job. Common sense tells us that an employer is going to hire a person with no disabilities for an entry level unskilled job that is in demand.

**8.** "It is a well-known fact of modern economic life that the demand for unskilled and semi-skilled labor has been rapidly declining ... and that the great bulk of the persistent hardcore unemployment in the United States is in these categories." Larson's Workers' Compensation Law, § 84.01(3).