# IN THE SUPREME COURT OF THE STATE OF DELAWARE

MURPHY & LANDON, P.A., §
§ No. 430, 2014
    Appellant-Below, §
    Appellant, § Court Below: Superior Court
§ of New Castle County
v. §
§ C.A. No. N13A-03-012 FWW
CHELSEY F. PERNIC, §
§
    Appellee-Below, §
    Appellee. §

Submitted: August 26, 2015
Decided: August 26, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court. **REVERSED**.

Lauren Pisapia Cirrinicione, Esquire, Murphy & Landon, Wilmington, Delaware, for Appellant.

Chelsey F. Pernic, Appellee-Below, Appellee, *Pro Se.*

**STRINE**, Chief Justice, for the Majority:

# I. INTRODUCTION

The appellant, Murphy & Landon, P.A. (the "Firm"), disputes the decision of the Unemployment Insurance Appeal Board (the "Board") finding that Chelsey Pernic, a paralegal at the Firm, had not been fired for just cause and was thus entitled to unemployment benefits. A Claims Deputy for the Department of Labor initially ruled for Pernic, and the Appeals Referee for the Department of Labor affirmed after preventing the Firm from submitting evidence about the full scope of Pernic's alleged misconduct. The Board then affirmed the Appeals Referee's decision, which the Superior Court affirmed once more in an effort to abide by the deferential standard of review that is required when reviewing decisions by the Board.

The Firm now appeals to this Court, arguing that the Board's conclusions—that Pernic was discharged for a single violation of the Firm's financial policy and that she was not given an adequate warning—were not supported by substantial evidence in the record. Relatedly, the Firm contends that this error resulted in large measure because the Firm was unfairly restricted from presenting evidence of the broader scope of Pernic's poor job performance, including her lateness, disrespectful and uncooperative attitude, and shirking, in its hearing before the Appeals Referee. It argues that the Board did not remedy this error because, although the Firm was allowed to present evidence of Pernic's cumulative misconduct in the Board hearing, the Board nonetheless concluded, without explanation, that Pernic was fired for a single incident of misconduct, a conclusion that was not supported by substantial evidence in the record.

1

Although our standard of review of a decision by the Board is deferential, it is not altogether without teeth. In this case, the Board's conclusions were not rationally grounded in the record, and thus, we need not defer to them. For one, the Board erred by deferring to the Appeals Referee's conclusion that the cause of Pernic's termination was her decision to pay an invoice without permission when that conclusion was inconsistent with substantial, unrebutted evidence, including testimony that Pernic had been warned about her substandard performance in several areas, and her termination letter, which stated that Penic was terminated for six different types of misconduct. Unlike the Appeals Referee, the Board at least heard the evidence that Pernic was fired for cumulative misconduct, but it then failed to explain why it gave that evidence no weight at all, despite Pernic's failure to contradict it. In other words, although the Board tried to cure the Appeals Referee's improper limitation of the record, it then failed to give any rational consideration to the evidence before it and deferred to the original decision made on what it knew to be an improperly limited record.

The Board's decision that Pernic did not receive a clear warning that she could be terminated for another instance of misconduct is also unsupported by substantial evidence in the record. The uncontradicted record evidence shows that Pernic received a warning that her insubordination and poor performance could lead to her termination, but she continued to act disrespectfully and was therefore terminated. The Firm should not be penalized because it did not anticipate the precise form that Pernic's last act of misconduct would take. Nor should it be penalized for allowing Pernic time to improve her deficient performance. To do so would create a perverse incentive for an employer to

2

discharge an employee at the first instance of poor performance in order to avoid the outcome that the Firm suffered here. Accordingly, we reverse and remand the judgment of the Superior Court affirming the Board's decision.

## II. FACTUAL AND PROCEDURAL HISTORY

Pernic worked as a paralegal at the Firm from 2009 to 2010, and again from 2011 to 2012. Linda Ferguson, Pernic's aunt and the Firm's supervising paralegal, recommended Pernic for the position. Pernic was terminated on May 11, 2012, after several months of poor performance. Her termination letter stated that she had been terminated because of her chronic lateness;[1] uncooperative attitude; rude behavior toward Frank Murphy, her supervising attorney; refusal to help with overflow work; and refusal to work overtime, as required. The letter also stated: "[y]ou fail to take supervision and consequently, you take it upon yourself to make decisions and take actions without first checking with your supervising attorney. *Your most recent egregious example* is your processing of an expert deposition fee for an opposing party's witness in the amount of $3,000."[2]

On May 13, 2012, Pernic filed a claim for unemployment benefits with the Delaware Department of Labor's Division of Unemployment Insurance. In her claimant fact-finding questionnaire, Pernic stated that most of the reasons for her termination were not brought to her attention and that those that had been brought to her attention had been corrected. Pernic also indicated that she had not been told that her job was in jeopardy.

---

[1] The letter explained that despite her chronic lateness, she would leave at 5:30 PM, and thus was not working a full day.

[2] App. to Opening Br. at 22 (Termination letter dated May 11, 2012) (emphasis added).

The Firm opposed her application, claiming that it had just cause to terminate Pernic, and submitting a copy of her termination letter. The Firm also stated that Pernic was warned in December 2011 that her job was in jeopardy due to her attendance and attitude problems.

The Claims Deputy for the Department of Labor interviewed Pernic, who denied that she was frequently late for work and took long lunches.[3] She also claimed that she "requested hundreds of payments" for invoices, that she did so "all the time" as "part of [her] job," and was not aware that she was required to get approval from anyone.[4] When asked if she had been warned about the conduct that led to her termination, Pernic admitted that she had a meeting with her supervisors, Murphy and Ferguson, in which she was warned that she "needed to change the way [she] spoke to [Murphy]."[5] Nonetheless, the Claims Deputy concluded that the Firm had failed to meet its burden of showing just cause for Pernic's termination because there was no evidence that Pernic's behavior rose to the level of wanton or willful misconduct. The Firm appealed the Claim Deputy's decision.

A hearing before the Appeals Referee was held on August 13, 2012. Although the Firm stated that there were multiple reasons for Pernic's termination, the Appeals Referee directed the parties to focus only on the last incident leading to Pernic's termination— Pernic's unauthorized payment of $3,000 to an opposing party's expert—and prohibited

---

[3] Pernic represented herself *pro se* in the proceedings before the Claims Deputy and the Appeals Referee.

[4] App. to Opening Br. at 8 (Unemployment Insurance Fact-Finding Sheet).

[5] App. to Opening Br. at 5 (Unemployment Insurance Claimant Fact-Finding).

4

the Firm from presenting evidence about the wider scope of Pernic's poor performance. The Appeals Referee also prohibited the Firm from cross-examining Pernic about her statements denying that she was never late to work, never took long lunches, and was never warned that she could be terminated.

The Appeals Referee heard testimony from (i) Pernic's supervising attorney, Frank Murphy; (ii) Pernic's aunt and the Firm's supervising paralegal, Linda Ferguson; (iii) two other Murphy & Landon legal assistants; and (iv) Pernic. Murphy testified that he had received and intended to oppose the $3,000 invoice from the other side's expert witness because he believed it was exorbitant. He stated that Pernic took the invoice, which was addressed to him, from his inbox and authorized payment without his knowledge. He also testified that Pernic's statement that she had routinely approved such invoices on her own was not true, and that paralegals were not permitted to approve payments without permission.

Ferguson testified that the Firm had an unwritten policy requiring a supervising attorney to approve the payment of invoices, and that as far as she knew, all of the legal assistants, including Pernic, were aware of the policy. She testified that when she had previously worked as a personnel manager at another small law firm, the firm did not put policies of this kind in writing. Ferguson also testified that she had recommended to Murphy that he fire Pernic. Two other legal assistants testified that they were trained to clear all payments with an attorney before making them, and that they had never made a payment without first seeking approval.

5

In her testimony, Pernic continued to contend that she regularly arranged for payment of invoices without obtaining attorney approval and that she was not informed of a firm policy requiring attorney approval of invoice payments until after she had arranged for payment of the disputed invoice.

On August 27, 2012, the Appeals Referee issued a decision in Pernic's favor, finding that the Firm had failed to provide evidence showing that Pernic received notice of the invoice approval policy. The Appeals Referee thus concluded that the Firm had not proven that Pernic's actions arose to willful or wanton misconduct, because such a finding generally requires that the employee receive an unequivocal warning that her conduct could lead to dismissal.

The Firm appealed the decision to the Board, arguing that the Appeals Referee had erroneously restricted the Firm from presenting evidence about the other incidents and issues that were the cause of Pernic's termination. The Board heard the Firm's appeal on February 6, 2013 and permitted the Firm to submit evidence of the full scope of Pernic's misconduct leading to her termination. That is, the Board appears to have tried to cure the Appeals Referee's refusal to hear relevant evidence relating to all of the reasons that Pernic was terminated. But that cure was less than effective for several reasons. One key reason is that at the Appeals Referee hearing, the Firm was denied the chance to cross-examine Pernic about relevant topics, including her statements to the Claims Deputy that she had never been late to work, that she did not take long lunches, and that she acted uncooperatively. That is because Pernic did not appear at the Board hearing. Instead, the

6

only evidence presented at the hearing were Pernic's time records[6] and testimony from Firm employees indicating that Pernic was insubordinate, and had received a clear warning that she could be terminated but continued to perform poorly. For example, Deborah Abbott, a Murphy & Landon legal assistant who worked near Pernic, testified that Pernic was usually late for work, took long lunches, refused to help with overflow work, refused to work overtime, and was rude and disrespectful to Murphy. She testified that Pernic was warned about her lateness.

Likewise, Murphy testified that Pernic was underperforming, and that he and Ferguson had met with Pernic to go over her job deficiencies, inform her of what was required of her, and make clear that she would be fired if she did not improve.[7] Pernic had admitted that this meeting occurred in her interview with the Claims Deputy, although she did not acknowledge that she was warned that she could be terminated. According to Murphy's unrebutted testimony before the Board, Pernic's behavior worsened after this meeting.[8]

In response to a Board member's question regarding why the Firm did not fire Pernic sooner, Murphy stated that he was worried about creating additional problems for Ferguson and the Firm's supervising paralegal, who was suffering from multiple

---

[6] The time records showed that in January and February 2012, Pernic did not work a full work-day, and that she often reported six hours or less of work per day. Once she was warned that her job was in jeopardy, she would add an entry for "non-billable" time to give the appearance that she was working a seven-and-a-half hour day, still short of her eight-hour requirement.

[7] The date of this meeting is unclear from the record. In his testimony before the Board, Murphy stated that the meeting occurred a few months before her termination. Pernic's fact-finding questionnaire referred to a meeting with Murphy and Ferguson in late September or early October 2011. The Firm submitted papers referring to a meeting between Pernic, Murphy, and Ferguson in December 2011.

[8] *See* App. to Opening Br. at 118 (Tr. of Admin. Hearing, Feb. 6, 2013).

7

sclerosis, and that Pernic had been an acceptable employee until the last six to eight months of her employment. Another Board member asked if Pernic was given an unequivocal warning that she had to improve or she would be terminated. Murphy testified in response that he and Ferguson gave such a warning to Pernic "probably a couple months before the termination."[9] Ferguson did not testify at the Board hearing, but the Board had access to her testimony before the Appeals Referee, which was entirely consistent with Murphy's.

On March 11, 2013, the Board issued its decision affirming the decision of the Appeals Referee and awarding unemployment benefits to Pernic. The Board acknowledged that, "[i]t is clear that the Claimant was warned that she could lose her job, if she did not improve."[10] The Board also stated that although the invoice payment incident by itself was insufficient evidence of willful and wanton conduct, "the Employer presented evidence of conduct that . . . could constitute just cause for discharge."[11] Nonetheless, the Board was uncertain whether the Firm's warning was sufficient:

> The Employer's case before the Board relied on cumulative misconduct as a basis for discharge, whereas the case before the Referee seemed to rely on a single incident. Which conduct formed the basis for the warning? If, as it now appears, the Claimant was warned about lateness, long lunches, and other performance issues, and then fired for the unauthorized payment of an invoice, there is a disconnect between the warning and the discharge.[12]

---

[9] App. to Opening Br. at 123 (Tr. of Admin. Hearing, Feb. 6, 2013).
[10] App. to Opening Br. at 130 (Decision of the Unemployment Insurance Appeal Board).
[11] *Id.*
[12] *Id.*

8

Of course, the only reason that the Firm focused its case before the Appeals Referee on the single incident of misconduct was that the Appeals Referee forced it to do so, over the Firm's objections.

After thus determining that the Firm's other documented reasons for firing Pernic were "disconnect[ed]" to her final instance of poor performance, and that Pernic had been given a "mixed message" about what conduct the Firm would tolerate because of its desire to protect Pernic's aunt, the Board concluded the Firm did not have just cause to fire Pernic.[13] In other words, rather than giving the Firm credit for patiently dealing with Pernic's subpar performance, and only terminating her after she had been given ample time to improve, the Board ignored the cumulative nature of Pernic's failings, acted as if her final act of misconduct was an aberration, and concluded that her termination was unjust.

The Firm then appealed to the Superior Court, who affirmed the Board's decision in an order and opinion dated July 11, 2014.[14] In so holding, the Superior Court noted that the standard of review of the Board's decision—whether the ruling was supported by substantial evidence and free from legal error—is "deferential" and thus, "the Board's decision will only be modified in extreme circumstances."[15] The Superior Court then did its best to adhere to that deferential standard of review. It found that the Firm was given a fair hearing before the Board because the Firm was not restricted from presenting evidence of Pernic's misconduct, and the Board considered that evidence when rendering

---

[13] *Id.*
[14] *Murphy & Landon, P.A. v. Pernic*, 2014 WL 3400997 (Del. Super. Ct. July 11, 2014).
[15] *Id.* at \*3.

its decision. It found that the Board's conclusions that the warning given to Pernic was disconnected from the cause of her firing and that Pernic may have received a "mixed message" were supported by the evidence in the record.[16] The Superior Court concluded that it would not "reevaluate how the Board weighed the evidence before it."[17]

This appeal followed.

## III. ANALYSIS

This Court's review of the Superior Court's opinion and order is limited to the question of whether there is substantial evidence in the record to support the Board's findings and whether such findings are free from legal error.[18] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[19] Like the Superior Court, this Court considers the record in the light most favorable to the party prevailing on the Board's appeal, here, Pernic.[20] This Court does not weigh the evidence, determine questions or credibility, or make its own factual findings.[21]

An employee who is discharged for just cause is disqualified from receiving unemployment benefits.[22] Generally, there is just cause if an employee commits a "willful or wanton act or pattern of conduct in violation of the employer's interest, the

---

[16] *Id.* at *2.
[17] *Id.* at *5.
[18] *Thompson v. Christiana Care Health System*, 25 A.3d 778, 782 (Del. 2011).
[19] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994).
[20] *Thompson*, 25 A.3d at 782.
[21] *Id.*
[22] 19 *Del. C.* § 3314(2).

10

employee's duties, or the employee's expected standard of conduct."[23]  "If an employer consistently tolerates willful or wanton misconduct . . . the employer may not be justified in firing employees without first warning them that their conduct no longer is acceptable."[24]  The employer bears the burden of proving by a preponderance of the evidence that the employee was terminated for just cause.[25]

On appeal, the Firm argues that the Board's conclusions—that Pernic was discharged for a single violation of the Firm's financial policy and that Pernic was not given an adequate warning before she was terminated—were unsupported by the record and not the product of an orderly and logical deductive process.  The Firm argues that it was unfairly restricted from presenting evidence of Pernic's misconduct in its hearing before the Appeals Referee, and that this error was not remedied on appeal to the Board because the Board affirmed the Appeals Referee's conclusion that Pernic was fired for a single act of misconduct against the weight of uncontradicted evidence in the record.

Pernic did not appear at the Board hearing, and thus, the Firm was not able to cross-examine her about her statements to the Claims Deputy that she had not engaged in misconduct and had not received an adequate warning.  Pernic has also not taken the time to file an answering brief to us, leaving us without any response to the Firm's arguments, even though this Court granted Pernic's request for an extension to allow her an additional month to file her answering brief.[26]  After the expiration of the later filing

---

[23] *Avon Prods., Inc. v. Wilson*, 513 A.2d 1315, 1317 (Del. 1986).
[24] *Moeller v. Wilmington Savs. Fund Soc'y*, 723 A.2d 1177, 1179 (Del. 1999).
[25] *Edmunds v. Kelly Servs.*, 2012 WL 4033377, at *2 (Del. Sept. 12, 2012).
[26] *Murphy & Landon, P.A. v. Chelsey F. Pernic*, No. 430, 2014 (Order) (Del. Nov. 24, 2014).

deadline, this Court allowed Pernic an additional week to file her brief and informed her that her failure to respond could result in an order against her or the imposition of a penalty under Supreme Court Rule 33, but Pernic still failed to submit a response.[27]

Even though our standard of review of Board decisions is deferential, it is not meaningless, and we need not defer to findings that are not rationally supported by substantial evidence in the record.[28] As important, our application of this deferential standard of review is influenced by the undisputed legal error committed by the Appeals Referee in inappropriately restricting the issues before her. Therefore, in addressing whether the Board's decision is rationally supported by the record, we must consider whether the Board in fact redressed the legal error committed by the Appeals Referee, not only by allowing the relevant evidence that the Firm was restricted from presenting initially to be heard, but by giving rational consideration to that evidence, the failure of Pernic to rebut it, and the improper limitation on the Firm's ability to cross-examine Pernic in reaching its own decision. In other words, as part of determining whether to defer to the Board's fact findings, we cannot ignore the legal error committed at the original hearing, but must consider whether that error was remedied adequately by the Board in hearing the Firm's appeal.

Here, we find that the Board's decision to defer to the Appeals Referee's conclusion that Pernic was fired for a single incident of misconduct, which was based on

---

[27] Because Pernic did not submit an answering brief, this Court determined that the matter would be decided on the basis of the opening brief and the record.

[28] *See Boggerty v. Stewart*, 14 A.3d 542, 550 (Del. 2011) ("Where the findings are not supported by substantial evidence, or are not the product of an orderly and logical reasoning process, then the decision under review cannot stand.") (internal quotation marks omitted).

12

the Appeals Referee's erroneous limitation of the record, was contradicted by unrebutted testimony and documentary evidence. Rather than ensuring that it reviewed the record fully to correct the improper evidentiary limitations imposed by the Appeals Referee, the Board instead disregarded large elements of the record and largely deferred to the decision of the Appeals Referee, which was based on her own improperly restricted review of the relevant evidence and issues.[29] The Board could not simply ignore the abundant unrebutted evidence supporting the Firm's rendition of events without reasoned explanation.[30] For the same reason, the Board's finding that Pernic did not receive an adequate warning that she would be terminated if she continued to engage in misconduct is also unsupported by the uncontradicted evidence in the record.

### i. Unrebutted Evidence Was Presented That Pernic Was Fired For Cumulative Misconduct, Not a Single Incident

Although the Firm sought to introduce evidence that Pernic was fired for cumulative misconduct, including chronic lateness, an unwillingness to assist others, and a disrespectful attitude toward her supervisors, the Appeals Referee restricted the Firm from presenting such evidence in its hearing. Instead, the Firm was limited to presenting

---

[29] *Cf. Boulevard Elec. Sales v. Webb*, 428 A.2d 11, 15 (Del. 1981) (reversing and remanding to the Superior Court to remand to the Board when the Board improperly limited the scope of evidence to be introduced at its hearing).

[30] *See Watson v. Wal-Mart Assoc.*, 30 A.3d 775, 779 (Del. 2011) ("Although the Board is the fact-finder, it is not free to ignore this evidence if it is undisputed."); *see also Pusey v. Natkin & Co.*, 428 A.2d 1155, 1157 (Del. 1981) (holding that there was not substantial evidence to support the Industrial Accident Board's ruling when the claimant produced unrebutted evidence "which the Board could not ignore"); *Tatten Partners, L.P. v. New Castle Cnty. Bd. of Assessment Review*, 642 A.2d 1251, 1258 (Del. Super. 1993), *aff'd sub nom. New Castle Cnty. v. Tatten Partners, L.P.*, 647 A.2d 382 (Del. 1994) (holding that "the Board acted arbitrarily and capriciously in ignoring the competent evidence brought before it by" the claimant).

evidence related to the incident of misconduct that immediately preceded Pernic's termination: her unauthorized payment of a $3,000 invoice.

In allowing the Firm to submit new evidence in its hearing before the Board, the Board implicitly acknowledged that the Appeals Referee improperly limited her inquiry to focus only on that incident. We agree with the Board that the Appeals Referee erred by limiting the record, when substantial evidence, including Pernic's termination letter, suggested that she was fired for misconduct that had occurred over several months. And although the Board attempted to cure the Appeals Referee's improper restriction of the record, the Board then deferred to the Appeals Referee's conclusion that Pernic was fired for a single instance of misconduct without any explanation.[31] That conclusion was not rationally supported by the evidence before the Board. For example, Pernic's termination letter stated "the reasons for your termination are many" and then listed six specific types of misconduct.[32] Several witnesses also confirmed that Pernic was terminated because of her inadequate performance over six to eight months.

The Board made no attempt to address the Firm's substantial and uncontradicted evidence that showed that Pernic was terminated for her cumulative misconduct, nor did it explain why it deferred to the Appeals Referee's conclusion that Pernic was fired for a single incident. Thus, this Court cannot defer to the Board's conclusion because it does not reflect a rational consideration of the record evidence and it compounded, not cured,

---

[31] App. to Opening Br. at 131 ("If, as it now appears, the Claimant was warned about . . . [her performance issues] and then fired for the unauthorized payment of an invoice, there is a disconnect . . . .").

[32] App. to Opening Br. at 22.

the Appeals Referee's original error: improperly restricting the Firm's ability to present relevant evidence.[33]

### ii. Uncontradicted Evidence Supports the Conclusion That Pernic Received a Clear Warning That She Could Be Terminated

In addition, there is substantial, uncontradicted record evidence showing that Pernic received a clear warning that she would be terminated if she continued to engage in misconduct. As the Board itself stated, "[i]t is clear that the Claimant was warned that she could lose her job, if she did not improve."[34] Nonetheless, the Board determined that there was a disconnect between the Firm's warning, which focused on Pernic's "lateness, long lunches, refusal to work extra hours, and other performance issues," and her ultimate termination after she paid an invoice without authorization.[35]

We cannot defer to this conclusion for two reasons. First, it is grounded in the assumption that Pernic was fired for a single incident of misconduct, which, as discussed, is not rationally supported by the evidence in the record. Second, even if we were to assume that Pernic was fired solely because she paid an invoice without permission, substantial evidence suggests that the Firm's warning put her on notice that an act involving lack of proper respect toward her supervisors could lead to her termination.[36]

---

[33] *Cf.* 19 *Del. C.* § 3320(a) ("The [Board] shall remand a case to the appeal tribunal to supplement the existing evidence when it is determined to be insufficient to form a substantial basis for a decision.").

[34] App. to Opening Br. at 131.

[35] *Id.*

[36] We note that Pernic's testimony that as a paralegal, she was entitled to approve invoices for her supervising attorney is not intuitively plausible. It would be odd for a law firm to allow any legal assistant, without attorney supervision, to approve an invoice that would ultimately be paid by a client. Moreover, in this instance, the invoice was addressed to Murphy and placed in his inbox. Pernic took it out of his inbox without permission. Presumably, it was put in Murphy's

15

As the Superior Court noted, the inquiry into whether a warning is sufficient to put the employee on notice is "very fact specific."[37]   For example, in *Optima Cleaning Systems, Inc. v. Unemployment Insurance Appeal Board*, the Superior Court explained:

> *[A]n employer's warning is not necessarily limited to putting the employee on notice of the impropriety of the specific conduct that led to the warning.* For example, if an employee is cited for failing to wear a tie, he may be unsuccessful in arguing that he did not receive a warning for subsequently failing to shine his shoes. This is especially true if the employee was aware that he was obligated to shine his shoes. Arguably, the two violations are different. However, both violations involved the employee's attire, and the employee had notice that improper attire was unacceptable.[38]

The Board's finding that the Firm was required to inform Pernic what the "trigger" for her discharge would be "in terms of timing, conduct, or failure to improve" is an unreasonable requirement and contrary to Delaware law. An employer need not specify the types of conduct that could lead to termination so long as the employee is aware that certain types of conduct are improper and prohibited.[39]   The employer is only required to

---

inbox so that he could consider how it should be addressed, and if and to what extent it should be challenged or paid.

[37] *Murphy & Landon, P.A. v. Pernic*, 2014 WL 3400997, *5 (Del. Super. Ct. July 11, 2014).

[38] 2010 WL 5307981, at *4 (Del. Super. Dec. 7, 2010) (emphasis added). The two cases that the Superior Court relied on to find that the Firm's warning was inadequate are distinguishable from this case. In *Ortiz v. UIAB*, this Court concluded that the employer did not have just cause to dismiss an employee for lateness because he was never warned that his lateness, which had been condoned for several months, would result in his termination. 317 A.2d 100, 101 (Del. 1974). Under the "exceptional" circumstances of that case, this Court found that "a single unambiguous warning that proscribed conduct will not be tolerated, and discharge would be the consequence," was required. *Id.*
    In *Weaver v. Employment Security Commission*, the Superior Court similarly determined that an employer had not shown just cause to fire an employee because it did not provide any evidence showing that the employee was warned that he would be fired because of his lateness. 274 A.2d 446 (Del. Super. Ct. 1971). Here, by contrast, the uncontradicted evidence before the Board showed that Pernic received a warning that her behavior could lead to termination.

[39] *See Optima Cleaning Systems, Inc. v. Unemployment Ins. Appeal Board*, 2010 WL 5307981, at *3 (Del. Super. Dec. 7, 2010) (internal citations omitted) ("[B]ecause it is unlikely that an

show that the employee was warned that a general category of misconduct "was unacceptable."[40]

Here, the Firm presented abundant, uncontradicted evidence that Pernic was sufficiently warned that her behavior was unacceptable. Although the Appeals Referee erroneously refused to hear evidence from the Firm about anything other than the invoice incident, Pernic admitted to the Claims Deputy that she had received a warning about her subpar job performance. On appeal, the Board tried to cure the Appeals Referee's error by allowing the parties to present evidence of Pernic's other misconduct leading to her termination. Accordingly, at the Board hearing, Murphy testified that he had warned Pernic clearly and unequivocally that she would be terminated if she continued to engage in misconduct and insubordination. A paralegal, Deborah Abbott, confirmed that Pernic had been warned about her bad behavior. But because Pernic did not attend the Board hearing, she was not subject to cross-examination by the Firm or the Board about her version of events. Nor has Pernic submitted an answering brief before this Court, and as a result, has not presented evidence contradicting the Firm's evidence that she was given a clear warning that her conduct could result in termination.

Thus, the record includes substantial, uncontradicted evidence that Pernic was warned that her uncooperative attitude and insubordination toward her supervising attorney was unacceptable, and that if she continued to act inappropriately, she would be

---

employer has created policy that prohibits the gamut of unacceptable employee conduct, an employee may be terminated, with just cause, for conduct that generally is adverse to the employer's interest, the employee's duties, or the employee's expected standard of conduct.").
[40] *Id.* at *4.

17

terminated. Her decision to take mail from her supervising attorney's inbox and pay a $3,000 invoice without seeking his permission is the same type of disrespectful conduct that she was warned not to continue. But the Board gave no weight to this uncontradicted evidence, and instead faulted the Firm for failing to predict that Pernic's next act of misconduct would involve taking an invoice about of Murphy's inbox and paying it without authorization. The Board's insistence that the Firm be Nostradamus was unreasonable and imposes an inequitable burden on employers.

Likewise, the Board seems to have reasoned that because Pernic's misconduct justified the Firm in terminating her earlier, the Firm did not have just cause for doing so later, when yet another example of her poor performance was discovered. The Board thus penalized the Firm for its decision to be patient with Pernic, who had been an acceptable employee before the last few months of her employment, out of a desire to be sensitive to Pernic's aunt. The Board's reasoning thus creates a perverse incentive for employers that risks harm to employees. Under the Board's approach, an employer will find it safer to fire an employee immediately upon the first instance of misconduct rather than give the employee an opportunity to redeem himself. We decline to endorse such an incentive scheme.

Because the Board's conclusions were not supported by substantial evidence, and were the result of the Appeals Referee's error in limiting the evidentiary record, we reverse the order and opinion of the Superior Court and remand to the Board for a hearing consistent with this opinion. In view of Pernic's refusal to participate before the Board or this Court, the Board shall enter a judgment in the Firm's favor if she does not appear or

18

participate on her own behalf and subject herself to cross-examination in any further proceedings. Although Pernic has no duty to obtain counsel, she is bound to either prosecute her claim or withdraw it.

**VAUGHN**, Justice, dissenting:

The Majority, claiming to be bound by a deferential standard of review, has determined that the Superior Court erred by affirming the Unemployment Insurance Appeals Board's ("UIAB" or the "Board") judgment. But the Superior Court was obligated to affirm the Board's judgment so long as it was: (1) supported by substantial evidence; and (2) free from legal error.[41] The record, taken as a whole, clearly shows that the trial court properly adhered to this standard of review and correctly affirmed the Board's decision.

Our review on appeal is the same as that of the Superior Court.[42] This Court is prohibited from weighing the evidence, determining questions of credibility, or making its own factual findings.[43] The Majority, however, has chosen to disregard this standard of review and replace the UIAB's factual findings with its own. By usurping the Board's role as factfinder, the Majority has created a standard providing significantly less deference than our precedent demands.[44] It has also erroneously found that the UIAB's conclusion was legally flawed. For these reasons, I respectfully dissent.

---

[41] *Tulou v. Raytheon Serv. Co.*, 659 A.2d 796, 802 (Del. Super. 1995).

[42] *Whitney v. Bearing Const., Inc.*, 2014 WL 2526484, at * 2 (Del. May 30, 2014) ("Board decisions are reviewed using the same standard at both the Superior Court and the Supreme Court. We review legal issues decided by the Board *de novo* and 'factual findings to determine whether they are supported by substantial evidence.'") (quoting *Scheers v. Indep. Newspapers*, 832 A.2d 1244, 1246 (Del. 2003)).

[43] *Thompson v. Christiana Care Health Sys.*, 25 A.3d 778, 782 (Del. 2011).

[44] *Evans v. Tansley*, 1988 WL 32033, at *2 (Del. Mar. 29, 1988) ("The law in Delaware is clear regarding appeals from the UIAB to Superior Court. The credibility of witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the UIAB to determine. The Superior Court is only to determine whether there is satisfactory proof to support

20

## I.     The "Substantial Evidence" Standard of Review

Our review of an appeal from the UIAB to the Superior Court is limited to a determination of whether there is substantial evidence in the record to support the UIAB's findings and whether such findings are free from legal error.[45]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[46]   While substantial evidence is more than a mere scintilla, it is less than a preponderance of the evidence.[47]   Like the Superior Court, this Court considers the record in the light most favorable to the party prevailing on the UIAB appeal.[48]   We do not "'weigh the evidence, determine questions of credibility, or make [our] own factual findings.'"[49]   "Questions of law are reviewed *de novo*."[50]

## II.     Analysis

The Superior Court concluded that the UIAB's determination was supported by substantial evidence and that Murphy & Landon (the "Firm") failed to meet its burden of proving Pernic was terminated for just cause.   Under the standard of review by which both this Court and the Superior Court are bound, I find no error in the trial court's decision.

---

a factual finding.") (citations omitted); *Scheers*, 832 A.2d at 1246-47 ("This Court, replicating the role of the Superior Court, reviews *de novo* legal issues decided by the Board, and reviews factual findings to determine whether they are supported by substantial evidence.  Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted).

[45] *Thompson*, 25 A.3d at 781-82.
[46] *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994).
[47] *Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1098 (Del. 2006).
[48] *Thompson*, 25 A.3d at 782.
[49] *Id.* (quoting *Falconi*, 902 A.2d at 1098).
[50] *Camtech Sch. of Nursing & Technological Scis. v. Del. Bd. of Nursing*, 2014 WL 4179199, at *1 (Del. Aug. 22, 2014).

21

The Majority, however, takes issue with the following factual findings made by the Board: (1) Pernic was terminated for the single incident of paying a $3,000 invoice without first acquiring authorization from her supervising attorney; and (2) Pernic never received an unambiguous warning that paying invoices without first receiving authorization would result in her termination. After thoroughly reviewing the record, I believe both of these findings are supported by substantial evidence. Additionally, the Majority concludes that the Board erred as a matter of law when it found that the Firm was required to provide Pernic with a specific warning that she could be fired for violating the Firm's unwritten financial policy. I believe this conclusion is in direct contradiction to Delaware law.

*Pernic's Failure to Appear Before the UIAB and Contest This Appeal is Not Dispositive*

At the outset, it is important to note that Pernic's failure to appear before the UIAB, while unwise, is not dispositive for the purposes of this appeal. The Board was permitted to hear the Firm's appeal with or without Pernic present and consider the entire record before the Appeals Referee, which included Pernic's testimony.[51] Similarly, her

---

[51] *See* 19 *Del. Admin. C.* § 1201-4.2 ("Presence of parties required. All parties to the appeal shall be present at the Board's hearing. Failure to appear within 10 minutes of the time indicated on the Notice may result in the Board hearing the appeal in absence of the delinquent party or, if the delinquent party is the appellant, dismissal of the appeal."). In the last paragraph of its opinion, the Majority instructs the Board to enter a judgment in favor of the Firm if Pernic does not appear at a new hearing. This instruction is clear error. *See id.* The presence of the Appellee at the hearing before the Board is not legally relevant. If an appellee fails to appear at a hearing before the Board, the Board may proceed to hear the appeal in the appellee's absence. There is no precedent for dismissal of the employee's petition for benefits if the employee is the appellee simply because the employee failed to appear.

22

ill-advised decision to not partake in the appeals process should not weigh into this Court's final determination.[52]

*The UIAB's Finding That Pernic Was Fired Solely for Violating the Firm's Financial Policy is Supported by Substantial Evidence*

Turning to the merits of the case, it is clear that the Appeals Referee improperly limited the Firm from presenting evidence of Pernic's cumulative misconduct. The Board, however, cured this error by allowing the Firm to present additional evidence of the reason or reasons for Pernic's discharge.[53] The Majority contends that although the Board heard this additional evidence, it failed to give it sufficient consideration. It bases this assumption on the belief that the evidence presented supported only one reasonable result: Pernic was fired for her cumulative misconduct, which culminated in her paying an invoice without supervisor permission.

I disagree. "[A] Board's finding of fact is given a high level of deference at both the Superior Court and Supreme Court. Overturning a factual finding of the Board may only be done 'when there is no satisfactory proof in favor of such a determination.'"[54]

---

[52] *See Moore v. Owens*, 2009 WL 3298139, *1 (Del. Oct. 14, 2009) (affirming the trial court's decision despite the Appellee's failure to file an answering brief on appeal); *see also Sullivan v. Mayor of Elsmere*, 23 A.3d 128, 132 (Del. 2011) ("[We review administrative agency decisions] to determine whether [the Board] acted within its statutory authority, whether it properly interpreted and applied the applicable law, whether it conducted a fair hearing and whether its decision is based on sufficient substantial evidence and is not arbitrary.") (citations and quotations omitted).

[53] *See Bilski v. Bd. of Med. Licensure & Discipline*, 2014 WL 3032703, at *7 (Del. Super. June 30, 2014) (finding that the Hearing Officer's improper reliance on nonbinding guidelines and the officer's subsequent flawed factual findings were cured by the Board's deliberations on the record), *aff'd*, 2015 WL 2452821 (Del. May 20, 2015).

[54] *Whitney v. Bearing Constr., Inc.*, 2014 WL 2526484, at* 2 (Del. May 30, 2014) (quoting *Wyatt v. Rescare Home Care,* 81 A.3d 1253, 1259 (Del. 2013)); *Steppi v. Conti Elec., Inc.*, 2010 WL 718012, at *2 (Del. 2010) ("Only when there is no satisfactory proof in favor of a factual

23

This Court's sole responsibility on appeal is limited to determining whether there is substantial evidence supporting the Board's conclusions.[55] Our duty ends there and does not include weighing evidence or determining what testimony the Board should have credited.[56]

In *Optima Cleaning Systems, Inc. v. Unemployment Ins. Appeal Bd.*, the Superior Court addressed a UIAB appeal with facts very similar to the case at bar.[57] In *Optima*, the employer offered evidence that the employee had engaged in cumulative misconduct, which the employer argued was the reason for his termination.[58] The Appeals Referee disagreed and concluded that the employee was terminated solely for what was labeled a "key incident."[59] The Referee went on to find that the "key incident" was not an act of willful and wanton conduct and thus the employee was not fired for just cause.[60]

On appeal to the UIAB, the Board affirmed the Referee's decision. In so doing, the Board described the employee's repeated misconduct leading up to the "key incident" as consisting of "various and wide-ranging issues."[61] It also observed that the employer

---

finding of the Board may the Superior Court, or this Court for that matter, overturn it.") (quoting *Johnson v. Chrysler Corp.*, 213 A.2d 64, 67 (Del. 1965)).

[55] *Johnson*, 213 A.2d at 66 ("Although our Courts have expressed it in various ways, we think the sole function of the Superior Court, as is the function of this Court on appeal, is to determine whether or not there was substantial competent evidence to support the finding of the Board, and, if it finds such in the record, to affirm the findings of the Board.").

[56] *See Williams v. Auto* Zone, 2013 WL 6662859, at *4 (Del. Super. Dec. 16, 2013) ("[T]he Court must show deference toward the Board's fact-finding and its application of those facts to the appropriate legal standards.").

[57] *Optima Cleaning Sys., Inc. v. UIAB,* 2010 WL 5307981 (Del. Super. Dec. 7, 2010).

[58] *Id.* at *1-2.

[59] *Id.* at *2.

[60] *Id.* at *2.

[61] *Optima Cleaning Sys. Inc.*, 2010 WL 5307981 at *3.

could have terminated the employee for these incidents, but chose not to do so.[62] With respect to the "key incident," the Board agreed that it "was an isolated inadvertence, rather than the product of willful or wanton behavior."[63]

The employer then appealed to the Superior Court, which affirmed the factual findings of the Board. The court reasoned:

> The Board considered [the employee's] repeated misconduct, concluding that the "numerous reprimands and warnings beginning in October 2005[] deal with various and wide-ranging issues." As a result, the Board determined that [the employer] did not terminate [the employee] as a result of his extensive track-record. Rather, it found that the key incident prompted [his] termination. Therefore, the Board considered all of the relevant evidence, giving little weight to [the employee's] repeated misconduct. To the extent that [the employer] challenges the weight that the Board gave to this evidence, such a determination is within the province of the Board. The Court does not weigh evidence, determine questions of credibility or make its own factual findings.[64]

The reasoning set forth in *Optima* is equally applicable to the facts of this case. Murphy testified that he and Ferguson had a meeting with Pernic at the Firm "a couple months" before she was fired to warn her that her cumulative misconduct, which included tardiness, a disrespectful and uncooperative attitude, and refusal to perform duties consistent with her job, could ultimately lead to her being fired.[65] Like the employer in *Optima*, the Firm alleged that it was Pernic's cumulative misconduct that led to her

---

[62] *Id.* at *2.

[63] *Id.*

[64] *Id.* at *3.

[65] Murphy testified that he and Ferguson had a private meeting with Pernic at which they went over "her chronic lateness, her taking too much time for lunch, her uncooperative attitude, her refusal to work overtime . . . . And we told her clearly and unequivocally that this is part of your job responsibilities." Appellant's Op. Br. App. at A123.

employment being terminated. The Board disagreed and determined that it was Pernic's unauthorized paying of the $3,000 invoice in violation of the Firm's unwritten financial policy that was the "key incident" and sole reason for her firing.[66] This factual determination was squarely within the purview of the Board and can only be overturned if it is not supported by substantial evidence.

The record shows that the Board's finding was supported by substantial evidence. Although it is possible that the Firm's decision to fire Pernic was based on her cumulative misconduct, a reasonable person could also conclude that her discharge stemmed solely from her alleged intentional breach of the Firm's unwritten financial policy. Based on the Firm's own employees' testimony, Pernic was a subpar worker who repeatedly acted rudely to her supervising attorney, took late lunches, failed to appear on time, and refused to perform tasks within the scope of her responsibility. But rather than terminating her employment for these acts, the Firm consistently tolerated Pernic's misconduct. It was not until Pernic's direct, and allegedly knowing, breach of the Firm's financial policy did the Firm decide to terminate her employment.

The UIAB considered these facts and came to a conclusion that is far from inconceivable. Despite the Majority's assertion, there is no evidence in the record that the UIAB "failed to give any rational consideration to the evidence before it."[67] The Board allowed the Firm to offer all the evidence it wished to offer and independently considered it. While it is true that the Firm offered more evidence than Pernic, including

---

[66] Pernic paid the invoice on April 12, 2012, exactly one month before she was fired.
[67] Majority Opinion at 2.

the testimony of three other paralegals who worked at the Firm, the UIAB is "free to accept and reject testimony, accept the credibility of witnesses and weigh evidence as it sees fit."[68] It was thus permitted to believe Pernic's testimony over the Firm's other employees.[69] It was also free to determine that Pernic's termination letter was written with an eye toward the present litigation and accordingly give it little or no weight.

It cannot be said that the Board's decision was unreasonable merely because this Court would have reached a different conclusion.[70] To hold otherwise contradicts the well-established and extremely deferential standard of review this Court must apply in an appeal from an administrative agency.[71] A "reasonable mind" could determine that the Firm tolerated Pernic's subpar performance due to her family connections with the firm[72] and prior satisfactory work,[73] but would not tolerate an intentional breach of a known company policy. Thus, under the "substantial evidence" standard of review, the Superior

---

[68] *Finestrauss v. Phillips*, 2002 WL 382858, at *3 (Del. Super. Mar. 8, 2002) (citing *Evans v. Tansley,* 540 A.2d 1088 (Del. 1988)).

[69] *Johnson*, 213 A.2d at 67 ("Admittedly, the record in this [case] is full of contradictions . . . but this is not to say that the claimant's case is thereby completely to be disbelieved.").

[70] *Finestrauss*, 2002 WL 382858, at *2 ("[The reviewing court] will give deference to the expertise of administrative agencies and must affirm the decision of an agency even if the court might have, in the first instance, reached an opposite conclusion.").

[71] *Johnson*, 213 A.2d at 67 (finding that the Superior Court judge erred by usurping the Board's role as fact-finder and weighing the evidence, determining the question of credibility of witnesses he had not heard, and reversing the award in the face of evidence which, if accepted, would have supported the employee's claim).

[72] Pernic was Ferguson's niece. Murphy testified that he chose not to fire Pernic for her cumulative misconduct for two reasons, the first being that it would cause "repercussions with [her] family." Murphy went on to state: "I was . . . concerned as to the repercussions for Ms. Ferguson. I will tell you the repercussions for Ms. Ferguson having had to, as [Pernic's] supervisor, participate in her firing has been terrible on the personal side for her." Appellant's Op. Br. App. at A121-22.

[73] Murphy testified that the second reason he chose not to fire Pernic for her cumulative misconduct was that "[she was not] always a terrible employee" and when she first started with the Firm she "showed a lot of motivation and . . . effort." Appellant's Op. Br. App. at A122.

27

Court did not err by affirming the UIAB's finding that Pernic was fired solely for paying the invoice.

*The Conclusion That Pernic Was Not Warned She Could Be Fired for Paying an Invoice Without Murphy's Approval Is Supported by Substantial Evidence*

The Majority also takes issue with the UIAB's factual finding that Pernic did not receive an unambiguous warning that an invoice paid without approval of the supervising attorney was a violation of Firm policy and would lead to termination. The Majority contends that Pernic did receive adequate warning that her action could lead to her termination. This argument, however, is only applicable by extension of the Majority's first factual finding, *i.e.*, Pernic was fired due to her cumulative misconduct and not for the single act of paying the invoice. The Majority's conclusion that Pernic was provided sufficient warning would thus only be correct if a "reasonable mind" could not find that she was fired solely for paying the invoice. As discussed above, the Appellant has failed to satisfy that high burden here.

In the alternative, the Majority contends that even if Pernic was terminated solely for paying the invoice, there is no disconnect between that act and the prior, general warning she received. But, as will be discussed *infra*, because the Firm fired Pernic solely for paying the invoice, it was required to show that it provided her with an unambiguous warning that paying invoices without authorization could lead to her being fired. There is no evidence on the record showing that such a warning was given.

When Ferguson and Murphy met with Pernic months before her termination, they warned her that her tardiness, disrespectful attitude, long lunches, and refusal to do work

28

for which she was responsible could ultimately lead to her being fired.[74] Neither Murphy nor Ferguson warned Pernic that the unauthorized payment of an invoice could lead to her being fired. In fact, the Firm's financial policy was never even mentioned. Pernic testified as much in front of the Appeals Referee, stating that she received no warning regarding the payment of invoices and was unaware that she could be fired for violating the Firm's unwritten financial policy.[75]

Moreover, the only evidence the Firm offered to show that Pernic was even aware of the unwritten financial policy was Ferguson's testimony that she believed "th[e] policy was part of [Pernic's] learning process."[76] Conversely, Pernic testified that she was unaware of the financial policy, received no formal training, and had paid "hundreds of" invoices without receiving any type of warning that her conduct was prohibited.[77] She also testified that Ferguson had directly told her that she could pay the invoices without approval "as long as they were correct."[78] Although the Firm rebutted this testimony with evidence of its own, the UIAB, acting within its role as factfinder, chose to believe Pernic. The evidence presented was sufficient for a "reasonable mind" to determine that

---

[74] Murphy testified his meeting with Pernic lasted over an hour, they discussed her cumulative misconduct, and that he and Ferguson told Pernic that "you can lose your job if you don't straighten yourself out." Appellant's Op. Br. App. at A123.

[75] The firm did not document the existence of the meeting with Pernic and failed to make any record of what was discussed.

[76] Appellant's Op. Br. App. at A56.

[77] Appellant's Op. Br. App. at A66. In her testimony before the Appeals Referee Pernic stated: "If I had done it hundreds of times throughout the two years that I worked there, then I would expect that somebody would have caught onto it and that I would have gotten a warning, a verbal warning, a written warning, something, but I wasn't." Pernic also stated: "The invoices would come in and I would pay them because that's what I was told to do by all the other people I worked with." Appellant's Op. Br. App. at A65, A67.

[78] Appellant's Op. Br. App. at A66.

Pernic was not warned she could be fired for paying unauthorized invoices and was unaware of the unwritten financial policy's existence.

The Majority avoids reaching this conclusion by again improperly making its own factual finding. Specifically, the Majority accepts as true Murphy's testimony that Pernic went into his office and took the invoice out of his mailbox without his permission to pay it.[79] The Majority concludes that this act falls within the general warning that Murphy gave Pernic to cease all disrespectful behavior. Pernic, however, testified that she received the invoice directly and did not take it out of Murphy's mail.[80] The Board considered this conflicting evidence and found that Pernic was fired because she breached the financial policy by paying the invoice. The Board did not find that Pernic stole the invoice out of Murphy's inbox or that she knowingly acted in violation of company policy. It was the duty of the Board to determine whose testimony was credible and reach a reasonable conclusion based on that testimony. Because the Board satisfied that standard here, I find no error in the Superior Court's affirmance.

---

[79] In *Mazzetti & Sons, Inc. v. Ruffin*, the employee appealed a Superior Court decision reversing an Industrial Accident Board decision that awarded him worker's compensation. The employee alleged that the Superior Court "improperly acted as a fact finder and then substituted its own findings of fact for those of the Board." On appeal, this Court agreed, discussed the deferential standard of review that is "substantial evidence," and reversed the trial court's decision. 437 A.2d 1120, 1121-22, 1124-27 (Del. 1981).

[80] Pernic testified: "This invoice was not in his inbox . . . . Because I never put invoices in his inbox because they would get lost, and then they would be gone, and then we wouldn't pay them, and then we would get a late fee . . . ." Appellant's Op. Br. App. at A68-69.

*The UIAB Did Not Err as a Matter of Law by Determining That the Firm Was Required to Warn Pernic of the Consequences of Violating the Firm's Unwritten Financial Policy*

Finally, the Majority contends that the Board erred as a matter of law when it determined that the Firm was required to inform Pernic what the "trigger" for her discharge would be "in terms of timing, conduct, or failure to improve."[81] As the Majority holds, "An employer need not specify the types of conduct that could lead to termination *so long as the employee is aware that certain types of conduct are improper and prohibited*."[82] Moreover, the "[v]iolation of an established employer policy may constitute just cause to terminate an employee . . . [only if the employee is] aware that the policy exists and that a violation of the policy may result in termination."[83]

The Majority, again making its own factual finding, has determined that Pernic had knowledge of the unwritten policy and thus received adequate warning. The Board, however, made no such finding.[84] As discussed above, Pernic testified that she was unaware of the Firm's unwritten policy and never received a warning regarding the unauthorized payment of invoices. The Firm was required to show that Pernic had

---

[81] Majority Opinion at 16.

[82] *Id.* (emphasis added) (citations omitted).

[83] *Optima Cleaning Sys. Inc*, 2010 WL 5307981 at *3; *see also McCoy v. Occidental Chem. Corp.*, 1996 WL 111126, at *3 (Del. Super. Feb. 7, 1996) ("Violation of a reasonable company rule may constitute just cause for discharge, but the employee must be aware that the policy exists and may be cause for discharge.").

[84] In its decision, the Board stated: "Where the company policy has been clearly communicated to the employee, the employer has given adequate notice to justify termination." The Board went on to find that the payment of a single invoice, without approval, in violation of an "unwritten policy" is clearly insufficient evidence of willful and wanton conduct. Appellant's Op. Br. App. at A130.

31

knowledge of the unwritten financial policy to justify her termination,[85] and it was within the purview of the Board to accept or reject the Firm's testimony. Because the Board's factual findings were supported by substantial evidence, it cannot be said that its legal conclusion was erroneous.[86]

### III.    Conclusion

The UIAB considered all of the evidence regarding Pernic's misconduct, the counseling she received for her deficient performance, and the actual cause of her termination. After reviewing the conflicting evidence, the Board chose to accept Pernic's testimony as credible. Such was the Board's right as factfinder. The Majority has rejected the Board's findings not because there is "no satisfactory proof in [their] favor," but merely because it disagrees with them.[87] I adhere to the deferential standard of review that governs administrative agency appeals and find that the Board's judgment was supported by substantial evidence and free from legal error. Accordingly, I dissent.

---

[85] *See Smoot v. Comcast Cablevision*, 2004 WL 2914287, at *4 (Del. Super. Nov. 16, 2004) ("An employee's violation of a company policy of which that employee is aware may create just cause for termination of employment.") (citing *Fader v. Burris Foods.,* 1997 WL 366889, at *2 (Del. Super. May 14, 1997)).

[86] Admittedly, the Board's opinion should have provided more clarity regarding what rule of law it was relying on to affirm the Appeals Referee's decision. Nevertheless, the Board reached the correct legal conclusion and its decision should be affirmed on appeal.

[87] *See Steppi*, 2010 WL 718012, at *2 (quoting *Johnson*, 213 A.2d at 66).